**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Mark Sanchez, an individual,<br><br>Plaintiff,<br><br>v.<br><br>United Parcel Service Incorporated, a corporation<br><br>Defendant. | No. CV10-1586 PHX DGC<br><br>**ORDER** |

On June 15, 2012, Defendant United Parcel Service, Inc. ("UPS") filed a motion for summary judgment against *pro se* Plaintiff Mark Sanchez. Doc. 76. UPS filed a statement of facts ("SOF") in support of the motion for summary judgment. Doc. 77. On August 17, 2012, Plaintiff responded to UPS's motion (Doc. 81), and filed his own supporting affidavit. Doc. 82. Subsequently without leave of the Court, on September 6, 2012, Plaintiff filed an amended response (Doc. 84), an amended affidavit (Doc. 82), and a SOF (Doc. 85). UPS has filed a motion to strike these documents and Plaintiff has responded. Docs. 88, 89. The motions are fully briefed, and no party has requested oral argument. For the reasons that follow, the Court will grant in part and deny in part UPS's motion for summary judgment, and deny the motion to strike.

**I.   Background.**

Plaintiff Mark Sanchez began working for UPS in 1983, and he has been in his current position as a Feeder Driver since 1994. Doc. 20 at 3. In 2000, Plaintiff suffered a

labrum tear of the left shoulder.  Doc. 20 at 3; Doc. 77 at 4.  As a result of this injury, Plaintiff took a leave of absence from his UPS position from 2000 until 2009.  Doc. 77 at 4, 6.  Plaintiff's physician gave him work restrictions relating to lifting and driving.  Doc. 20 at 3.  Due to these restrictions, Plaintiff requested accommodations from UPS for his disability.  Doc. 20 at 3-4.  From 2002 through 2009, while on leave of absence, Plaintiff complained to UPS that it was discriminating against him in violation of the ADA.  Doc. 20 at 5.  Plaintiff's second amended complaint alleges three claims: (1) failure to accommodate in violation of the ADA; (2) discrimination in violation of the ADA; and (3) illegal retaliation in violation of the ADA.  Doc. 20 at 4-5.  UPS moves for summary judgment on all of Plaintiff's claims.  Doc. 76.

**II.    Legal Standard for Summary Judgment.**

A party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Summary judgment is appropriate if the evidence, if viewed in the light most favorable to the nonmoving party, shows "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Only disputes over facts that might affect the outcome of the suit will preclude the entry of summary judgment, and the disputed evidence must be "such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

**III.   Failure to Accommodate/Discrimination in Violation of the ADA.**

The ADA prohibits discrimination against a qualified individual with a disability, and requires employers to provide reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability.  42 U.S.C. § 12112(a)-(b)(5)(A); *Gribben v. UPS*, 528 F.3d 1166, 1169 (9th Cir. 2008); *Toyota Motor Mfg., Ky., Inc. v. Williams*, 534 U.S. 184, 193 (2002).  To establish a claim under the ADA for failure to accommodate or discrimination, a plaintiff must first establish that

he has a disability.

The ADA defines disability as "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such impairment; or (C) being regarded as having such impairment." 42 U.S.C. § 12102(1). Plaintiff alleges that the basis for his ADA claim is his left shoulder injury. Doc. 84 at 2. UPS contends Plaintiff is not disabled under the ADA because Plaintiff's shoulder injury has not substantially limited him in any major life activity. Doc. 76 at 6. Plaintiff claims his shoulder injury substantially limited him in the major life activities of lifting and sleeping. Doc. 84 at 2.

Sleeping and lifting can constitute major life activities. *See* 29 C.F.R. § 1630.2(i) (1996) (lifting and sleeping); *Head v. Glacier N.W. Inc.,* 413 F.3d 1053, 1060 (9th Cir.2005) (sleeping).[1] Whether a plaintiff is substantially impaired in such life activities, however, is an individualized determination which requires consideration of the nature, severity, duration, and impact of the impairment. *Fraser v. Goodale*, 342 F.3d 1032, 1039 (9th Cir. 2003). At the summary judgment stage, comparative or medical evidence is not required to establish a genuine issue of material fact regarding the impairment of a major life activity. *Head*, 413 F.3d at 1058. Plaintiff's own testimony may suffice to establish a genuine issue of material fact so long as it not merely self-serving and contains sufficient detail to convey the existence of the impairment. *Id*. at 1059. "[C]onclusory declarations are insufficient to raise a question of material fact." *Id.*

**A.    Sleeping.**

An allegation of great difficulty in sleeping is sufficient to establish a substantial limitation on the major life activity of sleeping for purposes of defeating summary judgment. *Burkhart v. Intuit, Inc.*, 2009 WL 528603 (D. Ariz. 2009) (citing *Head*, 413 F.3d at 1060). Here, Plaintiff has not provided sufficient detail showing that his shoulder

---

[1] The ADA was amended by the ADA Amendments Act of 2008 ("ADAAA"), which took effect on January 1, 2009. Pub.L. 110–325. The Ninth Circuit has held that ADAA does not apply retroactively, and thus it does not govern this litigation. *See Becerril v. Pima Cnty. Assessor's Office*, 587 F.3d 1162, 1164 (9th Cir. 2009).

injury has caused him great difficulty in sleeping. Plaintiff's affidavit states only that "I suffered a labrum tear, a permanent impairment that has substantially limited my ability to engage in certain major life activities including lifting and sleeping." Doc. 86 at 2. No other detail is provided. Plaintiff does not explain how his injury interferes with his sleep, describe the severity or duration of the interference, or provide any other information from which the Court can evaluate whether his shoulder injury substantially impairs the major life activity of sleeping. Plaintiff has provided only a conclusory assertion in his affidavit. As noted above, when it comes to deciding whether a plaintiff is disabled under the ADA, "conclusory declarations are insufficient to raise a question of material fact." *Head*, 413 F.3d at 1059.[2]

**B.    Lifting.**

An employee's inability to lift more than 25 pounds on a continuous basis does not substantially limit his ability to engage in the major life activity of lifting. *Thompson v. Holy Family Hosp.*, 121 F.3d 537, 540 (9th Cir. 1997). The *Thompson* court noted that "'substantially limited' refers to the inability to perform a major life activity as compared to the average person in the general population or a significant restriction 'as to the condition, manner, or duration' under which an individual can perform the particular activity." *Id.* at 539-40 (citing and quoting 29 C.F.R. § 1630.2(j)(1)(i)-(ii)). *Thompson* held that a plaintiff's inability to lift more than 25 pounds on a continuous basis, more than 50 pounds twice a day, and more than 100 pounds once a day due to a cervical injury was not sufficient to raise a genuine issue as to whether she was substantially limited in the activity of lifting. *Id.* Here, Plaintiff's physician gave him the following work restrictions: "no repetitive overhead lifting; not able to work with left arm above

---

[2] UPS cites Plaintiff's deposition testimony that his shoulder injury impacted his ability to sleep because he could not sleep on his left side without suffering pain. Doc. 77 at 7. Plaintiff testified that he can sleep on his right side and on his back. *Id.* This additional detail does not support a conclusion that Plaintiff's injury substantially impairs the major life activity of sleeping.

shoulder level." Doc. 86 at ¶ 7.[3] As noted above, Plaintiff makes only the conclusory assertion in his affidavit that "I suffered a labrum tear, a permanent impairment that has substantially limited my ability to engage in certain major life activities including lifting and sleeping." Doc. 86 at ¶ 5. Plaintiff provides no additional detail, no evidence that he was more limited in his ability to lift than the average person, and no evidence that his limitation posed a significant restriction. Plaintiff therefore has not raised a genuine issue of fact as to whether his injury significantly limited his ability to lift.

Furthermore, while the lifting restriction may liberally be construed as Plaintiff alleging that he was substantially limited in the major life activity of working, such construction does not aid Plaintiff. To withstand summary judgment on the ground that he was substantially limited in the major life activity of working, Plaintiff must present evidence showing that he was unable to perform a broad range of jobs in the relevant labor market. *Thornton v. McClatchy Newspapers, Inc.*, 261 F.3d 789, 795 (9th Cir. 2001) *opinion clarified,* 292 F.3d 1045 (9th Cir. 2002). "The inability to perform one particular job does not constitute [a substantial] limitation' on the general ability to work." *Thompson*, 121 F.3d at 540. Plaintiff presents no evidence that he was precluded from engaging in an entire class of jobs. In fact, Plaintiff testified that his work restriction did not prevent him from working in a broad range of jobs. Doc. 77 at 7. Thus, no issue exists as to whether Plaintiff was substantially limited in the major life activity of working.

Plaintiff has not presented sufficient evidence to create a genuine issue of material fact on whether his shoulder injury resulted in a substantial limitation to a major life activity. UPS therefore is entitled to summary judgment on Plaintiff's discrimination and failure to accommodate claims. *Celotex*, 477 U.S. at 323; *Anderson*, 477 U.S. at 248.

//

---

[3] Evidence cited by UPS shows that Plaintiff's initial 2001 work restriction was "no lifting over 25 lbs, no lifting above chest level" (Doc. 77 at ¶ 24), and in 2002 it was "not able to perform any repetitive overhead lifting or work with his arms above shoulder level" (Doc. 77 at ¶ 26).

## IV. Retaliation.

To establish a case of retaliation under the ADA, a plaintiff must show that (1) he engaged in a protected activity; (2) he suffered an adverse employment action; and (3) there was a causal link between the two. *Pardi v. Kaiser Found. Hosps.*, 389 F.3d 840, 849 (9th Cir. 2004). UPS argues that Plaintiff cannot show he suffered an adverse employment action, and, in any event, that no causal link exists between Plaintiff's alleged protected activity and the adverse employment action. Doc. 76 at 10. Plaintiff's response asserts that "UPS retaliated against me in violation . . . of the ADA by refusing to allow me to work, refusing to place me on a Feeder run that I bid for and or not permitted me to bid during the annual bid process and by otherwise subjecting me to different terms and conditions of employment, because of my complaints regarding disability discrimination." Doc. 84 at 10. Plaintiff makes the same assertion in his affidavit. Doc. 86 at 3. The Court will address UPS's arguments separately.

### A. Adverse Employment Action.

An adverse employment action consists of "adverse treatment that is based on a retaliatory motive and is reasonably likely to deter the charging party or others from engaging in protected activity." *Ray v. Henderson*, 217 F.3d 1234, 1243 (9th Cir. 2000). Plaintiff asserts he was not permitted to return to work. Doc. 84 at 10. Denying an employee the ability to work is reasonably likely to deter the employee from engaging in protected activity and therefore could constitute an adverse employment action under the *Ray* test. *Id.*

UPS argues in its motion for summary judgment that it engaged Plaintiff in the interactive process and chose not to return him to work because he could not perform the essential functions of his job, with or without reasonable accommodations. Doc. 76 at 9, 11. It appears UPS is arguing that it had a legitimate, non-retaliatory reason for not returning Plaintiff to work and therefore did not engage in an adverse employment action. *Ray*, 217 F.3d at 1240. In evaluating this argument, the Court will examine the essential functions of Plaintiff's Feeder Driver position and Plaintiff's work restrictions.

To establish the essential functions the Feeder Driver position, UPS relies on Plaintiff's deposition (Doc. 77-1, Ex. 1) and UPS's "List of Essential Job Functions" (Doc. 77-3, Ex. 2). During his deposition, Plaintiff acknowledged that essential functions of the Feeder Driver position include lifting up to 70 pounds independently and up to 150 pounds with assistance, and operating a standard transmission vehicle. Doc. 77 at ¶ 3. UPS's List of Essential Job Functions includes these requirements. Doc. 77-3, Ex. 2.

UPS also argues that lifting overhead is an essential function of the Feeder Driver position, but its List of Essential Job Functions does not include this requirement. *Id.* UPS notes that Plaintiff admitted in his deposition that overhead lifting was an essential function of the job (Doc. 77-1, Ex. 1 at 211:18-22), but Plaintiff also testified that overhead lifting is not an essential function (*id.* at 208:7-15). In addition, Plaintiff's affidavit states that "[i]t is false that I must lift packages to heights above my shoulder." Doc. 86 at ¶ 22. Thus, there appears to be a question of fact as to whether overhead lifting is an essential function of the Feeder Driver position.[4]

In July of 2001, Plaintiff's physician permitted him to return to work with the following restrictions: "no lifting over 25 lbs., no lifting above chest level. May operate a truck only with power steering." Doc. 77 at ¶ 24. These restrictions prevented Plaintiff from performing essential functions of his job – lifting 75 pounds, moving 150 pounds with assistance, and driving a standard transmission. In October of 2002, however, Plaintiff's physician revised the work restrictions to say only that Plaintiff was "not able to perform any repetitive overhead lifting or work with his arms above shoulder level." Doc. 77 at ¶ 26. It appears this constituted Plaintiff's only work restriction from October

---

[4] The fact that Plaintiff's affidavit contradicts one portion of his deposition does not mean that it can be disregarded as a sham affidavit. Under the sham affidavit rule, an affidavit must flatly contradict earlier sworn testimony to be disregarded. *Scamihorn v. Gen. Truck Drivers*, 282 F.3d 1078, 1085 n. 7 (9th Cir. 2002); **Error! Main Document Only.***Kennedy v. Allied Mut. Ins. Co.*, 952 F.2d 262, 266-67 (9th Cir. 1991). As noted above, Plaintiff also testified in his deposition that overhead lifting is not an essential function. Moreover, the sham affidavit rule does not preclude the non-moving party "from elaborating upon, explaining or clarifying prior testimony elicited by opposing counsel on deposition." *Id.*

of 2002 until he was reemployed by Defendant in 2009.  Because this case includes a factual dispute as to whether overhead lifting is an essential function of the Feeder Driver position, the Court cannot say that his restrictions from 2002 to 2009 prevented him from being employed in a Feeder Driver position.  The Court therefore cannot grant summary judgment on the basis asserted by UPS – that Plaintiff was prevented from working solely because he could not perform the essential functions of his job.

### B. Causation.

UPS also argues that "[e]ven if [it] had taken some adverse employment action against [Plaintiff], which it did not, [Plaintiff]'s own testimony destroys the causal link between such adverse action and any protected activity."  Doc. 76 at 11.  UPS points to Plaintiff's deposition testimony that UPS has retaliated against him since the late 1980s and the fact that his first protected activity – filing a discrimination charge – did not occur until 2001.  Plaintiff argues that Plaintiff cannot show that retaliation that began in the 1908s was caused by activity in 2001.

Although Plaintiff did testify in his deposition that UPS has retaliated against him since the late 1980s (Doc. 77 at 8), and has requested damages dating back to 1993 (*Id.*), his response to the motion for summary judgment asserts that he was not allowed to return to work "because of my complaints regarding disability discrimination."  Doc. 84 at 10.  This retaliation claim does include a time period – 2002 to 2009 – that follows the start of Plaintiff's discrimination complaints in December of 2001.  The Court cannot conclude that Plaintiff is unable to show causation because he also said in his deposition that he was retaliated against in the 1980s.  Surely Plaintiff can make no retaliation claim for acts that occurred before his protected activity began in 2001, but this fact does not preclude him from making such a claim for acts that occurred after 2001.  UPS makes no other argument regarding causation.

### C. Retaliation Conclusion.

UPS has failed to demonstrate the absence of a genuine issue of material fact as to Plaintiff's claim of adverse employment action and causation.  Accordingly, the Court

will deny UPS's motion for summary judgment on the retaliation claim.

### V.   UPS's Motion to Strike

The Court has reviewed Plaintiff's original (Docs. 81-82) and amended (Docs. 84-86) responses to UPS's motion for summary judgment. It does not appear that Plaintiff made any meaningful changes in his response to the motion for summary judgment or his affidavit. Plaintiff did include a statement of facts in his amended filings, and even that statement does not comply fully with the Court's local rules. But given Plaintiff's status as a pro se litigant, the Court cannot conclude that striking the statement of facts is warranted. The Court has been able to identify and address the issues raised by both parties with respect to the motion for summary judgment. The Court therefore will deny UPS's motion to strike.

**IT IS ORDERED:**

1. Defendant's motion for summary judgment (Doc. 76) is **granted in part and denied in part**.
2. Defendant's motion to strike (Doc. 88) is **denied**.

Dated this 19th day of November, 2012.

_____
David G. Campbell
United States District Judge